Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 3362 | DATE | Nov. 19, 2003 |
| CASE TITLE | Ibitayo, et al vs. McDonald, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry] Enter Memorandum Opinion and Order. Defendant Thomas and Smith's motion to dismiss is granted. |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

No notices required, advised in open court.
No notices required.
Notices mailed by judge's staff.
Notified counsel by telephone.
✓ Docketing to mail notices.
Mail AO 450 form.
Copy to judge/magistrate judge.

TH✓ courtroom deputy's initials

Date/time received in central Clerk's Office

number of notices

NOV 20 2003 date docketed

docketing deputy initials

date mailed notice

mailing deputy initials

Document Number

18

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN IBITAYO, et. al., | ) | |
| Plaintiff, | ) ) ) | 03 C 3362 |
| v. | ) ) | |
| JESS MCDONALD, Director and/or Acting Director of the Illinois Department Of Children and Family Services, et. al., | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM ORDER AND OPINION

**AMY J. ST. EVE, District Judge:**

Plaintiffs Steven Ibitayo and his wife Melinda Ibitayo filed suit on their own behalf and on behalf of their three minor children as parents and next friends against the Director of the Illinois Department of Children and Family Services ("DCFS") in his official capacity. Also named in their individual capacities were various participants in that agency's handling of matters concerning juvenile cases 95-3232, 95-3233, 95-3234, and 95-3235. Plaintiffs expressly alleged deprivation of their Fourth Amendment rights. Two of the individual defendants, Frances Thomas, a DCFS caseworker, and Jo Anne Smith, a social worker, now move to dismiss the complaints against them.[1] For the reasons stated herein, the Court grants the motion.

## BACKGROUND

Plaintiffs' interactions with DCFS commenced in February 1995, when Mr. Ibitayo's step-daughter, a non-party to this action, reported an alleged incident of abuse

1

by Mr. Ibitayo against her to DCFS. (R. 1-1, Complaint ¶ 37.) Defendant DCFS Investigator Taylor "indicated" the report,[2] and pursuant to that report, the Circuit Court of Cook County – Juvenile Division ordered Mr. Ibitayo to cease cohabitation with his wife and children. (*Id.* ¶¶ 38-40.) The court also barred any unsupervised visits with his three children, as well as his step-daughter. (*Id.* ¶ 40.) The order appears to have been first entered in June 1995. At the time, Mr. Ibitayo's step-daughter had already moved out of the family's residence. (*Id.* ¶ 27.) Subsequent to the initial barring order, the Juvenile court heard evidence on the matter, and in September 1995, Judge Brodhay declined to lift the barring order and instead entered an order requiring the Ibitayo family to submit to a series of counseling sessions. (*Id.* ¶¶ 42-47.) The order also required DCFS to monitor the family's compliance with the barring order. (*Id.* ¶ 47.) For the next eight years to the present day, the Ibitayo family was subject to home monitoring by the two named DCFS investigators, Taylor and Pugh. (*Id.* ¶ 56.) Caseworker Thomas allegedly visited the Ibitayo home on several occasions in the early morning and observed the children while dressing and bathing. (*Id.* ¶ 53.) Thomas and social worker Smith filed reports for use by the Cook County Juvenile Court. (*Id.* ¶¶ 73, 84.)

The Cook County Juvenile Court has renewed the barring order without modification, the most recent order being August 28, 2003. (R. 6-1, Def. Mem. p.4.) The orders have required Mr. Ibitayo to continuously reside apart from his wife and children for the past eight years. (R. 1-1, Complaint ¶ 56.)

---

[1] The remaining defendants – Naomi Taylor and Pamela Pugh – are DCFS investigators, sued in their individual capacities. There is no evidence that Plaintiff has served either of these individual Defendants, and neither Defendant has filed an appearance in the case.

[2] Reports of child abuse are "indicated," in the language of DCFR regulations, when supported by credible evidence. (R. 1-1 Complaint ¶ 33.)

2

To challenge the enforcement of this order, Plaintiffs commenced this suit in May 2003. They specifically complain of the extended eight-year period of family separation, as well as the alleged effects of continued DCFS intrusions into the home – including observation of the Ibitayo children while undressed in the bathroom preparing for school, interrogations of the children allegedly resulting in emotional distress, and the persistent threats of removal. (*Id.* ¶ 73.)

## LEGAL STANDARDS

A Rule 12(b) motion to dismiss tests the sufficiency of the complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Dismissal is proper only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 3d 59 (1984). The Court must accept all factual allegations in the complaint as true, and draw all reasonable inference on the plaintiff's behalf. *Jang v. A.M. Miller and Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997).

## ANALYSIS

Defendants Thomas and Smith filed their motion to dismiss only with respect to Counts Three and Six of the complaint. These counts seek damages pursuant to 42 U.S.C. § 1983 for alleged Fourth Amendment violations in connection with Defendants Thomas's and Smith's monitoring of the Ibitayo family and reporting to the Juvenile Court. Defendants seek to dismiss the complaint in the basis of the lapse of the period of limitations, the Rooker-Feldman doctrine, issue preclusion, and absolute and qualified immunity.

3

I.  **Statute of Limitations**

Defendants first argue that Plaintiffs' cause of action under § 1983 accrued at the time of the original barring order in June 1995, and is therefore time barred by the two-year statute of limitations. The Court disagrees.

Plaintiffs' complaint alleges a continuing violation of their constitutional rights. While the Circuit Court may have issued its original barring order over two years ago, it did not cover an infinite period. Plaintiffs allege that subsequent orders prolonged the alleged violation of constitutional rights. Each such order marks a "fresh" deprivation of rights. *See Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001); *Palmer v. Board of Educ.*, 46 F.3d 682, 686 (7th Cir. 1995).

Furthermore, according to the complaint, Defendants Thomas and Smith did not become involved in the matter until 2001 and 2002 respectively. (R. 1-1, Complaint ¶¶ 22, 83.) Although they acted pursuant to court orders traceable back to the 1995 barring order, it would be nonsensical to hold that actionable conduct by these individuals was time-barred in 1997 before Plaintiffs could even predict their involvement, let alone their use of allegedly constitutionally questionable means to enforce the order.

II.  **Rooker-Feldman**

Defendants next argue that the Rooker-Feldman doctrine deprives the Court of subject matter jurisdiction. They point to Seventh Circuit precedent holding that review of juvenile court orders lies outside the jurisdiction of the federal district courts. *See Jensen v.* Foley, 295 F.3d 745, 748 (7th Cir. 2002). Under Seventh Circuit precedent not cited by either party, however, the allegations against Defendants Thomas and Smith fall outside the scope of the juvenile court's order, and are not barred by Rooker-Feldman.

4

The Rooker-Feldman doctrine recognizes that this Court lacks appellate jurisdiction over state courts. *See Verizon Md., Inc. v. Public Service Comm'n of Md.*, 535 U.S. 635, 644 n.3, 122 S. Ct. 1753, 1759 n.3, 152 L. Ed. 2d 871 (2003). It "rests on the principle that district courts have only original jurisdiction; the full appellate jurisdiction over judgments of state courts in civil cases lies in the Supreme Court of the United States . . . ." *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993). The doctrine applies both to claims adjudicated in state court as well as claims that are "inextricably intertwined" with a state court judgment. *See Lewis v. Andersen*, 308 F.3d 768, 772 (7th Cir. 2002). Litigants should bring claims of injuries inflicted as a result of state court orders in the state courts. *Jensen v. Foley*, 295 F.3d 745, 747-48 (7th Cir. 2001).

The Seventh Circuit delineated a clear limit to the Rooker-Feldman doctrine in *Brokaw v. Weaver*, 305 F.3d 660 (7th Cir. 2002). As stated in *Brokaw*, "an issue cannot be inextricably intertwined with a state court judgment if the plaintiff did not have a reasonable opportunity to raise the issue in state court proceedings." *Id.* at 668 (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 558 (7th Cir. 1999) (internal quotations omitted). In *Brokaw*, the Seventh Circuit found that the plaintiff lacked a reasonable opportunity in prior juvenile court proceedings to raise claims against DCFS officials for misconduct because the juvenile court was limited under 705 ILCS 405/2-18 to consider "only the question of whether the minor is abused, neglected, or dependent." *Brokaw*, 305 F.3d at 668. The applicable statutory language appears unchanged today. *Brokaw* constrains the application of the Rooker-Feldman doctrine in the context of juvenile court orders.

5

Plaintiff has alleged misconduct by the agents enforcing the court order. Count Three complains of searches conducted by Defendant Thomas in the early mornings. It further alleges intrusion, among other places, into the children's bathroom while the children were undressed in preparation for school. Plaintiffs complain that these intrusions have caused psychological injury to the children. The alleged misconduct by Thomas is separate and distinct from the matter considered by the juvenile court. The juvenile court's inquiry was limited to abuse and neglect by Mr. Ibitayo. Rooker-Feldman, therefore, does not deprive this Court of jurisdiction over Count Three.

Count Six alleges that Defendant Smith prepared a report containing factual errors and omissions about the Ibitayo family. The complaint charges Smith with not only gross negligence, but also intentional misrepresentation. These allegations are directly analogous to those in *Brokaw*. Although Defendants point out that Plaintiffs could have sought leave to appeal the protective order against Mr. Ibitayo, that appeal would not have addressed whether Smith's actions were constitutional, but rather, whether Mr. Ibitayo was indeed a risk to the children. Following the framework established above, Rooker-Feldman does not bar jurisdiction over Count Six.

### III. Issue Preclusion

*Brokaw* also resolves whether issue preclusion bars Counts Three and Six. Where a state court has previously decided an issue such as probable cause, the Court should not upset that decision. *See Jensen*, 295 F.3d at 748-49. But if the issues decided in the prior adjudication are not identical, then, under Illinois law, collateral estoppel does not apply. *Brokaw*, 305 F.3d at 669 (citing *Kalush v. Deluxe Corp.*, 171 F.3d 489, 493 (7th Cir. 1999)).

Taking the facts as alleged by Plaintiff as true, the state court never considered the constitutionality of Thomas's searches. Even Defendants do not allege that the juvenile court ever considered the constitutionality of Thomas's conduct. The juvenile court's determination of whether or not the minor was abused or neglected did not necessarily include consideration of whether the constitutional rights of the family or children were violated by the conduct of DCFS. Accordingly, Count Three is not precluded by the state court decision.

Similarly, the state court did not address the "integrity of the evidence" produced by Smith in support of the barring order. That is the issue underlying Count Six. *Brokaw* specifically recognizes a distinction between the weight of evidence and its integrity. *Brokaw*, 305 F.3d at 670. Where a plaintiff alleged a conspiracy to fabricate evidence of neglect, the Seventh Circuit held that the juvenile-court finding that the evidence was sufficient to provide probable cause for removal did not bar subsequent consideration of whether the evidence was wrongfully fabricated. *Id.* In the current case, the state court's proceeding addressed only the "sufficiency" of Smith's report to support the probable cause finding necessary to continue the barring order and monitoring. The court did not address whether the report contained intentional misrepresentations. Accordingly, the state court did not decide the issues underlying Count Six. Count Six, therefore, is not barred by issue preclusion.

## IV. Defendants' Immunity From Suit

Defendants raise immunity as their final ground for dismissal. Defendant Smith is protected by absolute immunity for the quasi-judicial conduct alleged in Count Six.

Although absolute immunity for the conduct alleged in Count Three by Defendant Thomas appears more questionable, qualified immunity protects her alleged conduct.

### A.     Jo Anne Smith

Absolute immunity is available to protect the quasi-judicial acts of prosecutors and witnesses where an injury caused by their actions arises not from their conduct alone, but from a judicial decision. *Millspaugh v. County Dep't of Pub. Welfare of Wabash County*, 937 F.2d 1172, 1175 (7th Cir. 1991). Absolute immunity protects social workers in presenting evidence to the juvenile court. *Id.* The Seventh Circuit has held "that the dividing line between absolute and qualified immunity is whether the injury depends on the judicial decision. If there would be no loss but for the judge's acts, then the prosecutor or witness who induces the judge to act has absolute immunity." *Id.*

Plaintiffs allege that Defendant Smith violated their due process right to care for and raise their children. Plaintiffs allege that Defendant Smith prepared a clinical review of the Plaintiffs' family that was "rife with factual errors and/or omissions" for submission to the juvenile court. (R. 1-1, ¶ 84). Plaintiffs further allege that the report "had a direct adverse affect on the presiding juvenile court's determination to continue and extend the order" preventing Plaintiff Steven Ibitayo from residing with his family. (*Id.*) The alleged misrepresentations in the report prepared by Smith, standing alone, lack consequential harm. It is only their use by the juvenile court in rendering its decision that gives rise to the alleged injury of Plaintiffs. Consequently, Smith's actions are absolutely immune, and the Court dismisses Count Six. *See Id.* at 1176 ("[S]ocial workers . . . are entitled to absolute immunity in child custody cases on account of testimony and other steps taken to present the case for decision by the court."). *See also Brokaw v. Mercer*

8

*County*, 235 F.3d 1000, 1014 n.10 (7th Cir. 2000) ("absolute immunity would protect [social worker] for her involvement in the judicial process.")

**B.     Frances Thomas**

Count Three alleges that Defendant Thomas violated Plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures. Plaintiffs allege that Thomas conducted unreasonable searches of their home when she made numerous unannounced visits early on weekday mornings, and insisted on seeing the children during these visits in the bathroom and their bedrooms while they were "in various states of undress."

"[G]overnment officials performing discretionary functions are shielded from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Landstrom v. Ill. Dep't of Children & Family Servs.*, 892 F.2d 670, 675 (7th Cir. 1990). *See also Doe v. Heck*, 327 F.3d 492, 515 (7th Cir. 2003). For a constitutional right to be "clearly established," its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (citations and quotations omitted). In order to survive a defense motion to dismiss on qualified immunity grounds, Plaintiff "must show (1) that she has asserted a violation of a constitutional or statutory right, and (2) that the applicable legal standards were clearly established at the time the defendants acted." *Harrell v. Cook*, 169 F.3d 428, 431 (7th Cir. 1999). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-

9

existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987) (citations omitted).

Plaintiffs first claim that the Court should not address the question of qualified immunity on a motion to dismiss. Admittedly, some tension exists concerning the proper stage at which qualified immunity should be granted. *See, e.g., Manos v. Ciara*, 162 F. Supp. 2d. 979, 995 (N.D. Ill. 2001) (quoting Judge Easterbrook's partial dissent in *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000)). Qualified immunity remains as a basis on which to grant a motion to dismiss. *See, e.g., Kitzman-Kelley, on behalf of Kitzman-Kelley v. Warner*, 203 F.3d 454, 456-57 (7th Cir. 2000); *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997); *Lanigan v. Vill. of East Hazel Crest, Ill.*, 110 F.3d 467, 471 (7th Cir. 1997) ("[Q]ualified immunity may be raised in a motion to dismiss, but at that stage, we consider only the facts in the complaint which we are obligated to accept as true."). Deciding qualified immunity on a motion to dismiss protects public officers from the menace of unwarranted discovery. Delaying resolution of the defense until trial would undermine this function needlessly where disputed facts will not be dispositive. *See Landstrom*, 892 F.2d at 674 (7th Cir. 1990).

The Seventh Circuit has clearly stated that the safeguards of the Fourth Amendment apply to child welfare workers. *See Heck*, 327 F.3d at 509; *Brokaw v. Mercer County*, 235 F.3d at 1010 n. 4. If a social worker carries out a search pursuant to a court order, there is no violation of the Fourth Amendment. *See Brokaw v. Mercer County*, 235 F.3d at 1019. Here, Plaintiffs' allegations relate to Defendant Thomas's actions in carrying out the court's September 1995 order that a DCFS worker make unannounced regular visits to the Ibitayo household to ensure that Plaintiff Steven Ibitayo

10

was not residing in the home or having unsupervised visits with his minor children. Given the court order, Plaintiffs have failed to state a violation of their Fourth Amendment rights.

Plaintiffs fail carry their burden of alleging a sufficient legal basis for finding Thomas's alleged conduct outside the bounds of clearly established Constitutional law. In addition to alleging a substantive Constitutional violation as a matter of law, the Plaintiffs must also establish that Thomas was unreasonable in believing that her alleged actions – here unreasonable searches – were constitutional. *Erwin v. Daley*, 92 F.3d 521, 525 (7th Cir. 1996). Plaintiffs have not established that such an alleged violation was well-developed at the time of Defendant Thomas's visits to the home to place her on notice that such visits were unlawful. *Brokaw v. Mercer County*, 235 F.3d at 1023. Plaintiffs fail to cite any specific case law where a child protective services agent was found in violation of the Fourth Amendment for inspecting a home in the early morning or for inspecting the children's physical condition when undressed. As such, it was reasonable for Defendant Thomas to believe that her conduct was permissible. That conduct is therefore protected by qualified immunity.[3]

---

[3] Defendant Thomas argues that she is entitled to absolute immunity for her actions pursuant to the Ninth Circuit's opinion in *Coverdell v. Department of Social and Health Services*, 834 F.2d 758, 765 (9th Cir. 1987). In *Coverdell*, the Ninth Circuit extended absolute immunity to child protective services workers carrying out a court order. The court noted, however, that there was no allegation of improper action against the worker in that case. *Id.* The Court declines to extend the *Coverdell* opinion to this case.

## CONCLUSION

For the reasons stated above, Counts Three and Six of the complaint are dismissed.

Dated: November 19, 2003

ENTERED:

*[signature]*

AMY J. ST. EVE
United States District Court Judge